this sense, and to this extent, held adversely to the landlord; that is to say, so long as the lease to these appellants remained in force, and they remained in possession under it, the landlord could not make a valid, effectual lease to Thorn or any one else. It follows that the landlord never lost, and Thorn never acquired, the right to institute these summary proceedings, and the order appealed from must be affirmed, with costs.

(32 Misc. Rep. 693.)

SECKEL v. SIFF.

(Supreme Court, Appellate Term. November 9, 1900.)

CONTRACT OF SALE—BREACH—MEASURE OF DAMAGES.
In an action for breach of contract for failure to deliver certain personal property, the measure of damages is the difference between the contract price and the price of the goods in open market.

Appeal from municipal court, borough of Manhattan.

Action by Abraham Seckel against Nathan Siff to recover for breach of contract. From a judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before TRUAX, P. J., and DUGRO and SCOTT, JJ.

W. Klingenstein, for appellant.
M. Meyer, for respondent.

PER CURIAM. This action was brought to recover damages for breach of contract in failure to deliver certain personal property. There is no evidence of damage. The fact that the plaintiff's assignor was compelled to pay more for the goods than the defendant had contracted to sell them for does not establish the measure of damages. The measure of damages was the difference between the contract price and the price of the goods in open market. The evidence does not show this price. Judgment reversed, and new trial ordered, with costs.

(54 App. Div. 157.)

BURKE v. HENDERSON.

(Supreme Court, Appellate Division, Fourth Department. October 9, 1900.)

DEEDS—DESCRIPTION OF PROPERTY—CONSTRUCTION—BOUNDARY BY STREET—
LOCATION OF STREET—MAP.
1 Rev. St. marg. p. 748, § 2, places the interpretation of deeds on the same footing as personal contracts, in which the intention of the parties is to prevail. Land was conveyed by deed, which described the eastern boundary thereof as a line running a number of feet west of and parallel with the west line of a certain street, while deeds in the title described the land as part of a certain block according to a certain map. Held, that the eastern boundary should be the line parallel with the west line of the street as laid out and used, and not as shown on the map, since that was the intention of the parties.

Appeal from judgment on report of referee.

Ejectment by Mary S. Burke against Charles Henderson. Judgment for defendant, and plaintiff appeals. Affirmed.

## The following is the opinion of Referee W. G. LAIDLAW:

The action is ejectment. Union street, in Olean, runs north and south, and is the principal street in the city. Coleman street runs west from Union at right angles to Union. The plaintiff's lot, by her deed, is a corner lot bounded east by Union 33½ feet, and north by Coleman 90 feet, and west by a line parallel to Union. The defendant's lot, by his deed, fronts on Coleman, and is bounded north by Coleman 35 feet, and its eastern boundary is a line parallel with Union at the distance of 90 feet west from the western boundary of Union. The lots of the parties therefore adjoin, the western boundary of the plaintiff's lot being in part the eastern boundary of the defendant's lot. There is a fence separating the lots of the parties, and the plaintiff's contention is that this fence is located on the ground 11 feet too far east, and he seeks to recover in this action this strip, which plaintiff claims is a part of her lot. The defendant is in possession of the strip, claiming it as part of his lot, There is no clash in the description of the deeds of the parties. The description in each case starts at the point where the south line of Coleman intersects the west line of Union, and the plaintiff has 90 feet on Coleman and the defendant 35 feet on the same street. The difficulty has all arisen from the fact that by a recent survey of the lines of Union street for paving purposes the western boundary of that street has been located about 11 feet further west at the point in question than it had ever before been located or used by the public prior to such survey. Since the descriptions of the lots of both parties start in the western bounds of Union street, and run west on the south bounds of Coleman, the effect of this new line of Union is to take this strip of land 11 feet wide on Coleman from the defendant's lot, and include it in the plaintiff's. Starting in the new line of Union, there is not land enough for both parties. It would lack this strip 11 feet wide, and the question is, who must lose this strip? or, rather, which line of Union street, the old or the new, as between these parties, is the correct starting point in the description in their deeds? The common source of the title is Dean & Rhodes, who were grantees in a deed made by Ramsey and wife, dated May 16, 1885, which embraced the lands of the parties to this action, with other lands, in one description. Dean & Rhodes conveyed to Ryan, by deed dated April 2, 1886, a portion of the premises they got of Ramsey. The premises so conveyed to Ryan are the premises now owned by the defendant, who holds title to the same by mesne conveyances containing the same description as in the deed to Ryan. In the spring of 1886, shortly after Ryan bought the lot, he built a house on it, which is still standing, and occupied by the defendant. The plaintiff's lot is a part of the premises which Dean & Rhodes bought of Ramsey, and it was first conveyed as a separate lot by a deed dated December 18, 1886, by which Rhodes conveyed to his co-tenant, Dean, his interest in the lot. This is the lot owned by the plaintiff, who holds the title through mesne conveyances containing the same description as in the above deed from Rhodes to Dean. In the spring of 1897—nine years after Ryan purchased and built his house—a survey of Union street was made by the city for paving purposes, and upon that survey the west line of Union street was established about 11 feet further west than the west line of the street as it had been opened and used by the public prior to such survey. This survey is based upon the location of the street lines on the Gosseline map (so called), and the new line must be taken to be the correct line of the street, according to the map; and, as before stated, there could be no trouble between the parties as to the line if the street is taken as the correct line, because in that event the plaintiff would have all of her land called for by her deed lying east of the defendant's fence standing on the east line of his lot. It is evident that the question between the parties is to be determined as things existed in the spring and summer of 1886 upon the conveyance and deed of Rhodes to Ryan. The plaintiff has no better right than Dean & Rhodes would now have if they still owned her lot. Now, there can be no doubt that Dean & Rhodes intended to sell and Ryan intended to purchase a lot 35 feet front on Coleman, and lying east of Mary Ward's east line, and west of a line parallel to the western bounds of Union at the distance of 90 feet west of said boundary; and Ryan's lot was located on the ground accordingly, if we take the line of

occupation of Union street as the starting point. Ryan built his house on the lot, and the fence marking his eastern boundary, which is still standing, or another in its place. The parties must have intended the old line of Union, because the survey of the street was not made till nine years after the conveyance to Ryan, and therefore the new line could not have been in the minds of the parties, and there is no suggestion in the evidence tending to show that the line of the street as opened and used was not the true line as the parties understood it at the time Ryan's deed was given. Mary Ward's lot fronted on Coleman, and the east line of her lot is a line parallel to the west bounds of Union at the distance of 125 feet west therefrom; and the plaintiff's contention would take 11 feet off the east side of the Ward lot, and include it in the defendant's lot. When the Ryan lot was located, and Ryan's house built, Dean & Rhodes both lived in the neighborhood, and Rhodes went past Ryan's house daily as it was being built; and both Dean & Rhodes, who then owned the plaintiff's lot, stood by and saw Ryan build the house and erect the fence without making any suggestion that the lot was not properly located on the ground. The house evidently cost several times the price of the land, and, Dean & Rhodes owning the land east of Ryan's lot, and what is now the plaintiff's land, I do not see why they would not be stopped from saying now that they owned this strip in dispute; but, as this question was not raised on the trial, I prefer to put my decision on other grounds. Justice would seem to require that when the city established the new line Dean & Rhodes, if they still owned the plaintiff's lot, would have to lose the part of their lot taken by the city, instead of their grantee, Ryan. It was not Ryan's land the city took; it was the land of Dean & Rhodes. Judge Andrews, in Masten v. Olcott, 101 N. Y. 158, 4 N. E. 274, says: "Grants are supposed to be made with reference to an actual view of the premises." Chief Justice Jewett, in French v. Carhart, 1 N. Y. 102, says: "It is a cardinal rule in the construction of contracts that the intention of the parties is to be inquired into, and, if not forbidden by law, is to be effectuated." So important was this rule deemed that it was made a section of the Revised Statutes (1 Rev. St. marg. p. 748, § 2); and see notes of the revisors to the section, where they say the intention, among other things, is to put deeds upon the same footing as personal contracts, so far as interpretation is concerned; and this rule as to intention must be regarded as the cardinal rule of interpretation. But the plaintiff's real contention in the case is this: It is pointed out that in all the deeds from Dean & Rhodes in the defendant's title the defendant's lot is described as "part of block No. 15 in said village, according to a map thereof made by T. J. Gosseline, Esq." The map was put in evidence, and Union street is platted on this map as 115½ feet wide, and block No. 15 is bounded on the east by Union, and the plaintiff contends that by the words above quoted the effect is to read into the description in the deed of the defendant's lot the map lines of the block, particularly the east line of the block, which, by the map, is the west line of Union street, and that the west line of Union street, by the survey of the street made in 1897, is the true map, and the true line in fact of the street, and therefore that the new line of the street must be taken as the line of the street intended in the description in the defendant's deed. In other words, the plaintiff contends that the words in the deed referring to the Gosseline map obliges us to take the new line of the street in the place of the old line as the line intended by the deed. This contention of the plaintiff, I think, cannot be sustained. Defendant's lot is not a subdivision of the map. It is perfectly described in the deed without reference to the map. Coleman street is not on the map. The length of all the lines is given in the deed. The direction of the lines and their relative position are established by the street lines and Mary Ward's land, and these street lines and Mary Ward's lines are open, visible boundaries on the ground. The words "being part of block 15," etc., add nothing to the description. The description would be perfect without these words. But the words have their full effect, because the defendant's lot is part of block 15, so that part of the description is satisfied. The effect of adopting the plaintiff's contention would be to read into the deed words not there qualifying the words "west bounds of Union street," and limiting these words to make them mean the platted line of the map, instead of the line of occupation. This, I think, would be a

strange construction, and would defeat the intention of the parties, and work injustice. It is always to be kept in mind that the west line of Union street is referred to solely to enable Ryan to know where the land lay which he was purchasing, and the parties to the deed could only mean the line of the street as it had existed at all times prior to the new survey, and as it existed when Dean & Rhodes sold to Ryan; and the description in the deed does not call attention, even by implication, to any other line. The reference to the map was simply to designate the block, and it stops there. But, even if the map is read into the deed, it does not help the plaintiff, because, if the map line of the street is different from the street line as actually opened and used, the latter, as between Dean & Rhodes and Ryan, must control. Van Wyck v. Wright, 18 Wend. 156; 4 Am. & Eng. Enc. Law (2d Ed.) tit. "Boundaries," pp. 803–805, and notes; 2 Am. & Eng. Enc. Law (1st Ed.) p. 502. To conclude, I treat the west bounds of Union street as used and existing as a monument on the ground, and I hold that the parties contracted with reference to that monument as a matter of fact, and that, if the map line differed from the line of occupation, the latter must control, in view of the authorities just cited. I see no material difference in principle between this case and the case of Barrows v. Webster, 70 Hun, 599, 25 N. Y. Supp. 1131, affirmed in 144 N. Y. 422, 39 N. E. 357. This leads to a dismissal of the plaintiff's complaint upon the merits.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Cary, Rumsey & Hastings, for appellant.
Fred L. Eaton, for respondent.

PER CURIAM. Judgment affirmed, with costs, upon opinion of the referee.

---

(32 Misc. Rep. 623.)

### SHANNON v. HAWLEY.

(Supreme Court, Trial Term, New York County. October 29, 1900.)

CHECKS—EXCHANGE—CONSIDERATION.

> In an action by plaintiff as assignee after maturity of two checks drawn and delivered to the payee by defendant in exchange for a check of a third person, which was afterwards dishonored, defendant pleaded want of consideration. Held that, since one promise is a legal consideration for another, the plaintiff was entitled to recover.

Action by John G. Shannon as assignee after maturity of two checks drawn by Thomas R. Hawley, defendant, and given to payee in exchange for a check of a third party. The defendant pleaded that there was no consideration for the checks in suit, because the check received by him in exchange therefor was dishonored. Judgment for plaintiff.

Sumerwell, Shoup & Vermilya, for plaintiff.
Byron Travor, for defendant.

McADAM, J. It is elementary that one promise is a legal consideration for another. If a promissory note is made by A. to B. in exchange for a promissory note made by B. to A., each note is a valid consideration for the other, whether between the original parties, or in an action by an indorsee. It is in the nature of an ex-